FOX ROTHSCHILD LLP
Daniel Schnapp (DS 3484)
Fred Stevens (FS 1346)
100 Park Avenue, 15th Floor
New York, New York 10017
(212) 878-7900

Special Litigation Counsel to Plaintiff
Angela G. Tese-Milner, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 7 |
| THE EGGE COMPANY, LIMITED, | Case No. 06-11996 (REG) |
| Debtor. | |

-----------------------------------------------------------x

| | |
|---|---|
| ANGELA G. TESE-MILNER, as Chapter 7 Trustee of the Estate of The Egge Company, Limited, | |
| Plaintiff, | |
| | Adv. Pro. No. 08-_____ |
| - against - | |
| THOMAS BRACKEY, GRANT JOHNSON, TAYLOR REINHART, BENEVOLENT CAPITAL PARTNERS LP, and BENEVOLENT CAPITAL MANAGEMENT, | |
| Defendants. | |

-----------------------------------------------------------x

## COMPLAINT

Angela G. Tese-Milner (the "Trustee"" or "Plaintiff"), as Chapter 7 Trustee of the Estate of The Egge Company, Limited, the above-captioned debtor (the "Debtor"), by her attorneys, Fox Rothschild LLP, as and for her complaint herein against Benevolent Capital Partners LP, and Benevolent Capital Management (collectively, "Benevolent"), Grant Johnson ("Johnson"), Taylor Reinhart ("Reinhart"), Thomas Brackey ("Brackey") (all defendants collectively referred

to herein as the "defendants"), alleges, upon knowledge with respect to her own acts and, upon information and belief, with respect to the acts of others as follows:

## NATURE OF THE CASE

1. This case seeks to recover damages against defendants arising out of, among other things, their respective breaches of fiduciary duties owed to the Debtor and its creditors. Defendants breached their fiduciary duties by wrongfully: (i) undercapitalizing the Debtor, when they knew that the Debtor had no way to obtain capital other than through defendant Benevolent itself; (ii) allowing the Debtor to incur numerous debts defendants knew the Debtor could not repay and causing the Debtor to remain insolvent; (iii) terminating the Debtor's only sources of capital; (iv) allowing Debtor to operate, conduct business, and incur indebtedness in an undercapitalized and insolvent state; and (v) channeling assets out of the Debtor and into entities controlled by defendants.

## INTRODUCTION

2. On August 25, 2006 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United Stated Code (the "Bankruptcy Code").

3. On August 25, 2006, the United States Trustee appointed Angela G. Tese-Milner as the interim Chapter 7 trustee in this case. On April 3, 2007, Ms. Tese-Milner presided over the meeting of creditors in the Debtor's case and by operation of law, became the permanent trustee of the Debtor's estate. Ms. Tese-Milner is currently serving in that capacity.

## JURISDICTION AND VENUE

4. This adversary proceeding is brought pursuant to 11 U.S.C. §§ 502(d), 544, 548 and 550; Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); NYSDCL §§ 272 *et seq.*; common law causes of action for breach of fiduciary duty, deepening

insolvency, and aiding and abetting breach of fiduciary duty.

5. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 (a) and (b), 1334(b), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984.

## THE PARTIES

6. The Trustee is a member of the panel of private trustees established by the United States Trustee pursuant to 28 U.S.C. § 586. The Trustee maintains offices at Tese & Milner, One Minetta Lane, New York, New York 10012.

7. The Debtor is a corporation organized and existing under the laws of the State of Delaware. Prior to the Petition Date, the Debtor did business as the Egge Company at 27 West 24th Street, Suite 800, New York, New York 10011.

8. Defendants Benevolent Capital Partners LP and Benevolent Capital Management are limited partnerships organized and existing under the laws of the State of Delaware with a business address at 40 26th Avenue, Venice, California, 90291.

9. Defendant Grant Johnson is an individual residing in the State of California. At all relevant times, Johnson served on both Benevolent's and the Debtor's board of directors.

10. Defendant Taylor Reinhart is an individual residing in the State of California. At all relevant times, Reinhart served on both Benevolent's and the Debtor's board of directors.

11. Defendant Thomas Brackey is an individual residing in the State of California. Brackey served on the Debtor's board, as Debtor's legal counsel, and as legal counsel to Benevolent and other individuals with ownership interests in Benevolent. Brackey is a partner in the law firm Freund & Brackey, LLP ("F&B").

3

## FACTS

12. The Debtor was incorporated in the State of Delaware on December 15, 2004. Pursuant to Article II of its Articles of Incorporation, the Debtor's purpose was to acquire, manage, and commercially exploit music throughout the world.

**A. The Debtor's Board of Directors and Legal Counsel**

13. The Debtor's Board of Directors adopted the Debtor's Bylaws on January 8, 2005.

14. The Bylaws provided that the Debtor would be governed by a Board of Directors comprised of five (5) persons and that by majority vote, the Board would be empowered to control all aspects of corporate governance save for those reserved for the Shareholders pursuant to the Delaware Corporations Code.

15. The Bylaws of the Debtor provided that Benevolent would be entitled to appoint three of the five persons to comprise the Debtor's Board of Directors until such time as it recouped nine hundred thirty-seven thousand, five hundred dollars ($937,500) from its initial capital investment in the Company; and after such time, Benevolent would be entitled to appoint two directors.

16. At all relevant times, Benevolent held a controlling interest on the Debtor's five member Board of Directors.

17. The first Board of Directors was comprised of Johnson, Reinhart, Brackey, Mary Eggers, and Emily Eggers.

18. F&B served as corporate counsel to Debtor.

19. At the same time that F&B served as the Debtor's counsel, F & B served as counsel for defendants Johnson, Reinhart, and Benevolent.

4

B.  **Benevolent's Initial Capitalization of the Debtor**

20. Throughout its existence, the Debtor's only valuable assets, capital, and investments were contributed solely by Benevolent, Johnson, Reinhart, or entities controlled by Benevolent and/or Johnson and/or Reinhart.

i.  The License

21. On or about January 8, 2005, the Debtor entered into a Copyright License Agreement with Benevolent, in which Benevolent conveyed to Debtor an exclusive License (the "License") to exploit, sell, reproduce and distribute the sound recordings under the *Tomato Releases* trade name, including certain legendary blues masters.

22. In consideration for the License, the Debtor agreed to pay Benevolent, among other obligations, a royalty equal to fifty percent (50%) of the Net Proceeds attributable to the sale of the licensed works.

ii.  The Navarre Distribution Agreement

23. Benevolent caused the Debtor to enter into an agreement with the Navarre Corporation ("Navarre") in which Navarre would serve as Debtor's exclusive distributor of any and all sound or video recordings owned or controlled by the Debtor for a period of three years ("Navarre Agreement").

24. The Navarre Agreement required that 50% of all monies owing to the Debtor under the agreement would go directly to Benevolent until Benevolent had received payment of nine hundred thirty-seven thousand, five hundred dollars ($937,500).

iii.  The $250,000.00 Loan

25. Pursuant to a credit term sheet dated August 11, 2005 (the "Credit Term Sheet"), the Debtor agreed to repay Benevolent, by no later than September 19, 2005, one hundred and

twenty-five percent (125%) of a loan advanced by Benevolent to the Debtor in the amount of two hundred fifty thousand dollars ($250,000.00).

26. The repayment of this loan was to be from the Debtor itself and would exclude all monies received by Benevolent from Navarre.

27. On October 18, 2005, the Debtor's Board of Directors held a meeting at Benevolent's offices in New York City, during which the Board resolved that:

    i. the Corporation (Debtor) ratify and adopt the Term Credit Agreement dated August 11, 2005, as may be amended from time to time, whereby Benevolent Capital Partners LP acquires seven and one-half percent (7.5%) of all outstanding shares of EGGE stock in consideration of a loan to the debtor in the amount of two hundred fifty thousand dollars ($250,000.00).

    ii. the Corporation acknowledges receipt of two hundred fifty thousand dollars ($250,000) pursuant to the Term Credit Agreement from Benevolent Capital Partners LP in consideration for seven and one-half percent (7.5%) of all outstanding shares of EGGE stock;

    iii. the Corporation issue and deliver to Benevolent Capital Partners LP, one or more certificates representing a total of 1,112 shares of Class A Preferred stock pursuant to the Credit Term Sheet Dated August 11, 2005.

28. On December 5, 2005, Mary Eggers, as the Debtor's president, accepted and agreed to the Credit Term Sheet.

29. The Debtor did not receive any additional funding or transfer of assets at anytime.

C. **Benevolent's Control of the Debtor**

30. By causing the Debtor to enact Bylaws providing that Benevolent would be entitled to appoint three of the five persons to comprise the Debtor's Board of Directors until such time as it recouped $937,500 from its initial capital investment in the Company; the Benevolent entities ensured that they had control of the Debtor's Board of Directors.

31. At all times during the Debtor's existence, defendants maintained absolute control

over the Debtor's bank accounts and monthly budgets. The Debtor never received any monies directly. All incoming capital first went through Benevolent or F&B.

32. Benevolent required Mary Eggers to submit a monthly budget before allocating any funds to the Debtor. On a monthly basis, Mary Eggers submitted a budget proposal for the Debtor to Benevolent, which included payroll and payments to creditors.

33. Defendants Benevolent, Johnson, Reinhart, or entities controlled by Benevolent and/or Johnson and/or Reinhart allocated all funds payable to the Debtor for its monthly budgets, payroll and obligations to the Debtor's unsecured creditors, thereby rendering the Debtor insolvent and unable to operate its business.

34. Throughout its existence, Benevolent channeled assets out of the Debtor and into entities controlled by Benevolent, Johnson, Reinhart, and/or entities controlled by Benevolent and/or Johnson and/or Reinhart.

35. At the same time, Benevolent and the other defendants allowed the Debtor to incur several hundred thousand dollars in unpaid debt beyond what was owed to Benevolent. According to the Debtor's schedules, the Debtor owed not less than $479,350 in addition to what was owed to Benevolent.

**D. The Termination of the Debtor's Capital and License Agreement**

36. Defendants had total control of the Debtor throughout its existence, yet, at all times, defendants rendered and kept the Debtor insolvent.

37. In May of 2006, defendants terminated the Debtor's use of the License and stopped funding the Debtor's monthly budgets.

38. From the time Debtor was formed until the Debtor filed for bankruptcy, defendants allowed the Debtor to incur numerous debts which defendants which they knew the

7

Debtor could not repay without the use of the assets licensed by Benevolent.

39. Defendants also caused the Debtor to fail to pay federal taxes throughout its existence and pay only minimal state and local taxes.

E. **The Debtor's Bankruptcy Proceeding and F&B's Refusal to Produce Documents**

40. In May of 2006, Benevolent directed Mary Eggers to commence this bankruptcy proceeding.

41. Benevolent paid the five thousand dollars ($5,000) bankruptcy attorney's fee for commencing this bankruptcy case, which is listed in error on the *Disclosure of Compensation of Attorney for Debtor(s)* as being paid by the Debtor.

42. Despite numerous demands for the production of Debtor's records in their possession, F&B has refused to turn over the Debtor's records related to this case, other than selected incorporation documents and meeting minutes.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**Against Benevolent**

43. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

44. On its bankruptcy schedule, Debtor listed a $1.4 general, unsecured liability allegedly due to Benevolent.

45. Benevolent directed Mary Eggers, as Debtor's president, to file for bankruptcy protection.

46. Benevolent had control over Debtor's operating income and the allocation of these proceeds to Debtor's creditors.

47. Benevolent had absolute control over Debtor's operations and held a majority

position on the Debtor's Board of Directors.

48. Based on the foregoing, Benevolent owed a fiduciary duty to the Debtor and its creditors.

49. Benevolent breached its fiduciary duty to Debtor and its creditors by wrongfully: (i) undercapitalizing the Debtor, when it knew that the Debtor had no way to obtain capital other than through defendant Benevolent itself; (ii) allowing the Debtor to incur numerous debts defendants knew the Debtor could not repay and causing the Debtor to remain insolvent; (iii) terminating the Debtor's only sources of capital; (iv) allowing Debtor to operate, conduct business, and incur indebtedness in an undercapitalized and insolvent state; and (v) channeling assets out of the Debtor and into entities controlled by defendants.

50. Based on the foregoing, Benevolent breached its fiduciary duties to Debtor, and this Court should enter a judgment against Benevolent in favor of Plaintiff for the full amount of all outstanding liabilities of the Debtor and its Estate, and to any other damages to which Plaintiff is entitled.

### AS AND FOR A SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty
### Against Johnson and Reinhart

51. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

52. Johnson and Reinhart had control over Debtor's operating income and the allocation of these proceeds to the Debtor's creditors.

53. Johnson and Reinhart held positions on the Debtor's Board of Directors.

54. Based on the foregoing, Johnson and Reinhart owed the fiduciary duties of care and loyalty to the Debtor.

55. At the same time that Johnson and Reinhart served on the Debtor's Board of Directors, they were principals of, and had significant financial interests in, Benevolent. Johnson and Reinhart routinely breached their respective duties of loyalty to the Debtor and abused their positions with the Debtor by making decisions that were for the benefit of themselves and Benevolent and to the detriment of the Debtor.

56. Johnson and Reinhart breached their fiduciary duty to Debtor and its creditors by wrongfully abusing their positions with the Debtor in order to further the interests of interests of Benevolent by: (i) undercapitalizing the Debtor, when they knew that the Debtor had no way to obtain capital other than through defendant Benevolent itself; (ii) allowing the Debtor to incur numerous debts defendants knew the Debtor could not repay and causing the Debtor to remain insolvent; (iii) terminating the Debtor's only sources of capital; (iv) allowing Debtor to operate, conduct business, and incur indebtedness in an undercapitalized and insolvent state; and (v) channeling assets out of the Debtor and into entities controlled by defendants.

57. Based on the foregoing, Johnson and Reinhart breached their fiduciary duties to Debtor, and this Court should enter a judgment against Johnson and Reinhart in favor of Plaintiff for the full amount of all outstanding liabilities of the Debtor and its Estate, and to any other damages to which Plaintiff is entitled.

## AS AND FOR A THIRD CAUSE OF ACTION
**Breach of Fiduciary Duty Against Defendant Brackey**

58. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

59. Brackey owed the fiduciary duties of care and loyalty to the Debtor and its creditors as a Director of the Debtor and as a principal of F&B, Debtor's legal counsel.

60. Brackey's duties required that he not use his position of trust and confidence to further his private interests, that he keep informed of the Debtor's financial status and business, that he give his undivided and unselfish loyalty to the Debtor, and that there be no conflict between these duties and their own interests.

61. Due to the following simultaneous relationships, Brackey was unable to fulfill his duty of loyalty to the Debtor due to the resulting irreconcilable conflicts: (i) Brackey was and is a principal of F&B; (ii) F&B and Brackey served as counsel to the Debtor; (iii) F&B and Brackey served as counsel to Benevolent; (iv) F&B and Brackey served as counsel to Johnson and/or Reinhart; (v) Brackey was a Director of the Debtor; and (vi) F&B and Brackey had control of the Debtor's bank accounts and monthly budgets.

62. Brackey wrongly allowed his interests to take priority over their fiduciary duties to the Debtor and its creditors.

63. Brackey breached his fiduciary duties of care and loyalty to the Debtor and its creditors by wrongfully: (i) undercapitalizing the Debtor, when he knew that the Debtor had no way to obtain capital other than through defendant Benevolent itself; (ii) allowing the Debtor to incur numerous debts defendants knew the Debtor could not repay and causing the Debtor to remain insolvent; (iii) terminating the Debtor's only sources of capital; (iv) allowing Debtor to operate, conduct business, and incur indebtedness in an undercapitalized and insolvent state; (v) channeling assets out of the Debtor and into entities controlled by defendants; and (vi) acting in the best interests of F&B and/or Benevolent, and/or Johnson, and/or Reinhart, to the detriment of the Debtor.

64. Based on the foregoing, this Court should enter a judgment against Brackey in favor of Plaintiff for the full amount of all outstanding liabilities of the Debtor and its Estate, and

to any other damages to which Plaintiff is entitled.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Fraudulent Conveyance – Constructive Fraud – 11 U.S.C. §§ 548 and 550
### Against All Defendants

65. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

66. The following transfers constitute transfers of property of the Debtor to or for the benefit of defendants (the "Fraudulent Transfers"):

- any and all payments or transfers of the Debtor's property on account of any loans made to the Debtor;
- the surrender of the License Agreement; and
- any and all payments or transfers of the Debtor's property to any of the Debtor's Board Members or legal counsel.

67. The Debtor received less than reasonably equivalent value and/or fair consideration in exchange for each of the Fraudulent Transfers.

68. The Debtor was insolvent at the time each of the fraudulent transfers was made, or was rendered insolvent by making each of the Fraudulent Transfers.

69. At the time each of the Fraudulent Transfers was made, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonable small capital.

70. Sections 548(a) and 550(a) of the Bankruptcy Code empower the Trustee, for the benefit of the estate, to avoid and recover a Fraudulent Transfer to another individual or entity of an interest of the debtor in property from either the initial transferee of such transfer or the entity for whose benefit such transfer was made if the requirements set forth therein are met.

71. For all the foregoing reasons, pursuant to Sections 548(a)(1)(B) and 550 of the Bankruptcy Code, this Court should enter judgment avoiding the Fraudulent Transfers, and directing each recipient party to turn over the property transferred, or the value thereof, to the Trustee.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Fraudulent Conveyance by Insolvent –**
**11 U.S.C. §§ 544(b) and 550, and N.Y. Debtor and Creditor Law § 273**
**Against All Defendants**

72. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

73. At all times relevant to this cause of action, the Debtor had creditors with unsecured claims allowable under Section 502 of the Bankruptcy Code, and those creditors would have been able to avoid the Fraudulent Transfers under applicable law.

74. Pursuant to Section 544(a) of the Bankruptcy Code, the trustee has independent standing to assert each of the Causes of Action in this complaint which are grounded in DCL §§ 273-276.

75. The Debtor received less than reasonably equivalent value and/or fair consideration in exchange for each of the Fraudulent Transfers.

76. The Debtor was insolvent at the time each of the Fraudulent Transfers was made, or was rendered insolvent by making each of the Fraudulent Transfers.

77. For all the foregoing reasons, pursuant to Sections 544 and 550 of the Bankruptcy Code and DCL § 273, this Court should enter judgment avoiding the Fraudulent Transfers, and directing each recipient party to turn over the property transferred, or the value thereof, to the Trustee.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Fraudulent Conveyance by Insolvent –
### 11 U.S.C. §§ 544(b) and 550, and N.Y. Debtor and Creditor Law § 274)
### Against All Defendants

78. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

79. After each of the fraudulent transfers, the Debtor was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Fraudulent Transfers was an unreasonably small capital.

80. For all the foregoing reasons, pursuant to Sections 544 and 550 of the Bankruptcy Code and DCL § 274, this Court should enter judgment avoiding the Fraudulent Transfers, and directing each recipient party to turn over the property transferred, or the value thereof, to the Trustee.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Fraudulent Conveyance by Insolvent –
### 11 U.S.C. §§ 544(b) and 550, and N.Y. Debtor and Creditor Law § 275)
### Against All Defendants

81. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

82. After each of the Fraudulent Transfers, the Debtor intended or believed that it was going to incur debts beyond its ability to pay as they matured.

83. For all the foregoing reasons, pursuant to Sections 544 and 550 of the Bankruptcy Code and DCL § 275, this Court should enter judgment avoiding the Fraudulent Transfers, and directing each recipient party to turn over the property transferred, or the value thereof, to the Trustee.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Preferential Transfers – 11 U.S.C. § 547(b) and 550)
### Against All Defendants

84. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

85. At all relevant times, defendants were insiders of the Debtor.

86. Defendants received, or received the benefit of, the following transfers of the property of the Debtor within the one-year period prior to the Petition Date (collectively, the "Preferential Transfers"):

- any and all payments or transfers of the Debtor's property on account of any loans made to the Debtor;
- the surrender of the License Agreement; and
- any and all payments or transfers of the Debtor's property to any of the Debtor's Board Members or legal counsel.

87. The Debtor was insolvent at the time it made each of the Preferential Transfers, or was rendered insolvent as a result of making such Preferential Transfers.

88. The Preferential Transfers were respectively made to defendants on account of antecedent debts owed by the Debtor.

89. The Preferential Transfers enabled the receiving parties to receive more than they would have received if the Debtor's case were liquidated under Chapter 7, the Preferential Transfers had not been made, and the guarantor or the recipient creditor received payment of their claim against the Debtor.

90. For all the foregoing reasons, pursuant to Sections 547(b) and 550 of the

Bankruptcy Code, this Court should enter judgment against defendants, avoiding the Preferential Transfers received or benefiting each, and directing each to turn over the value of such transfers to the Trustee.

### AS AND FOR A NINTH CAUSE OF ACTION
(Objection to Claim – 11 U.S.C. § 502(d))
**Against All Defendants**

91. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth at length herein.

92. As set forth above, defendants have received transfers of property of the Debtor that are avoidable under Sections 544, 547 and/or 548 of the Bankruptcy Code.

93. For all the foregoing reasons, pursuant to Section 502(d) of the Bankruptcy Code, this Court should enter judgment disallowing any claim of any defendant unless and until it has returned any and all avoidable transfers, or the value thereof, to the Trustee.

***WHEREFORE***, the Plaintiff demands judgment against the Defendants as follows:

    a) on the first, second, third, fourth and fifth claims, the full amount of all outstanding liabilities of the Debtor and its Estate, and to any other damages to which Plaintiff is entitled;

    b) granting pre-judgment interest against each Defendant;

    c) avoiding the Fraudulent Transfers and Preferential Transfers and directing that they be returned to the Debtor's estate;

    d) granting costs and attorney's fees to Plaintiff; and

    e) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
May 5, 2008

    FOX ROTHSCHILD LLP
Special Litigation Counsel to Plaintiff
Angela G. Tese-Milner, Chapter 7 Trustee

By: /s/ Daniel A. Schnapp
    Daniel A. Schnapp (DS 3484)
    Fred Stevens (FS 1346)
    100 Park Avenue, 15th Floor
    New York, New York 10017
    (212) 878-7900